## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TOM SAWYER PRODUCTIONS, INC.  :
                                       :
          **Plaintiff.**           :
     **v.**                    :   **1:07CV01304 (RMC)**
                                         :
                                       :
PROGRESSIVE PARTNERS       :
ACHIEVING SOLUTIONS, et al.   :
                                       :
          **Defendants.**       :

### PLAINTIFF TOM SAWYER PRODUCTION, INC.'S MEMORANDUM OF LAW AND POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Plaintiff, Tom Sawyer Productions, Inc. ("TSP"), by and through their attorney, Jonathan F. S. Love, Esq., respectfully submits this memorandum of law and points and authorities in support of its opposition to the defendants' motion to dismiss, or in the alternative for summary judgment.

### PROCEDURAL HISTORY

TSP sues the defendants for tortious interference with the contract awarded to TSP by the Federal Highway Administration ("FHWA") on April , 2006 "the Contract"). (See Exhibit 1, FHWA Contract). On August , 2007, the defendants were served with the summons and complaint by counsel for TSP. Counsel filed the affidavit of service with the Court on

August    , 2007.  The defendants filed a motion to dismiss plaintiff's complaint under Federal Rule 12(b)(5) (ineffective service of process), Rule 12(b)(2) (personal jurisdiction over the defendants), Rule 12(b)(6)(failure to state a claim upon which relief may be granted), and in the alternative under Rule 56 (summary judgment).  Upon the reasons stated herein, the defendants' motion to dismiss and in the alternative for summary judgment must be denied.

ARGUMENT

I. <u>Service of Process on Both Defendants is Valid and Proper.</u>

   A. <u>The Federal Rules of Civil Procedure Permit Service By Counsel.</u>

   Federal Rule of Civil Procedure 4(c)(2) provides that service of the summons and complaint "may be effected by **any person** who is not a party and who is at least 18 years of age." (Emphasis added).  Counsel for the plaintiff is not a party to these proceedings.  As such, service by plaintiff's counsel is permissible. *See, Trustees of Local Union No. 727 Pension Fund, et al. v. Perfect Parking, Inc., et al.*, 126 F.R.D. 48, 51-52 (N.D.Ill.,1989) (service of summons and complaint by plaintiffs' counsel is proper).

B. Personal Service Upon Roy in the District of Columbia is Proper.

Roy admits that she was served personally, as required by Federal

Rule of Civil Procedure 4(e)(2).  Roy contends, however, that such service is

defective since she was in the District of Columbia as a party-deponent in a

state proceeding.  Roy's contention is inconsistent not only with the general

rule that personal service is permitted within a district where a non-resident

defendant is physically present, *see*, *Burnham v. Superior Court of*

*California*, 495 U.S. 604, 612-613 (1990), but also with the general

exception to that Rule, which is for the convenience of the Court, typically

when a civil proceeding interferes with criminal proceedings. *Greene v.*

*Weatherington*, 301 F.2d 565, 566-567 (C.A.D.C. 1962).

C.  Service on PPAS is Valid and Proper.

PPAS is a Maryland close corporation, of which Roy is the registered

agent.  Roy admits that she received service of the summons and complaint

on behalf of PPAS in this matter on August   , 2007.  While PPAS contends

that service upon Roy, its president and resident agent is improper because

"PPAS was immune from service of process at that time," we submit that

PPAS' contentions are inconsistent with Federal Rule of Civil Procedure

4(h)(1), which permits service of process on a corporation's officer or

resident agent.

PPAS contends further that service through its officers is invalid.

Such contentions are not only inconsistent with the Federal Rules of Civil

Procedure as recited in the defendants' motion, see Fed R. Civ. P. 4(h)(1),

but also it calls into question PPAS' comprehension of the Rules.

II.    Roy Is Subject to Personal Jurisdiction in the District of Columbia.

Roy is subject to personal jurisdiction in the District of Columbia

because she conducted business in the District of Columbia. (Exhibit 2, Roy

Depo, P. 17, L. 17-19) The FHWA contract specifically names Roy

personally as key personnel in the provision of services to the FHWA, which

is located in the District of Columbia. (See Exhibit 1, pg. 12)    In

fulfillment of her obligations under the FHWA contract, for which Roy was

compensated by TSP, Roy met in the District of Columbia with TSP and

FHWA officials. As such, the Courts in the District of Columbia have

personal jurisdiction over Roy, pursuant to District of Columbia Code §13-

423(a) (1).

Roy is subject to personal jurisdiction in the District of Columbia

because she caused tortious injury to TSP in the District of Columbia. TSP

was the prime contractor on the FHWA contract. TSP was responsible for

management and fulfillment of the FHWA contract requirements.

Nonetheless, Roy communicated to the FHWA contracting officers her

4

disagreements with TSP, which was not permitted nor authorized under the FHWA contract. Not long thereafter, the FHWA terminated TSP's contract. Upon information and belief, Roy's unauthorized and impermissible communication to the FHWA was all or part of the reason why the contract was terminated, thereby causing injury to TSP. Under District of Columbia Code §13-423(a) (4), this Court has jurisdiction over Roy for the personal injury to TSP that occurred in the District of Columbia.

III.     TSP's Claim for Tortious Interference States A Valid Claim.

As stated previously herein, TSP was the prime contractor on the FHWA contract. Roy was named as key personnel on the FHWA contract. Roy admits that she sent an email to FHWA contracting authorities that revealed dissension, disagreement and insubordination by Roy with TSP. The contract authorizes TSP with complete management responsibility for the contract. (See Exhibit 1, Pgs. 4-8) Roy's email communications to the FHWA were improper and interfered with TSP's contractual obligation to the FHWA. The FHWA terminated the contract with TSP for the stated reason of "convenience." TSP contends that Roy's improper communications with FHWA negligently and intentionally interfered with TSP's contract, such that the FHWA terminated the relationship. The contract termination caused substantial monetary damage and loss to TSP.

5

IV.    <u>TSP's Claims May Be Adjudicated By This Court.</u>

Defendant PPAS sued TSP in the Superior Court for the District of Columbia ("Superior Court"), alleging a breach of contract.  TSP answered that complaint, but did not file a counter-claim until after comments were made to TSP personnel by Van Nixon, the contracting officer on the FHWA contract, while both parties were attending an FHWA sponsored event in Charlotte, North Carolina in April 2007.   Mr. Nixon's comments began an investigation which prompted TSP to sue PPAS and Roy in this Court.

TSP does not dispute that some of the parties and facts that are involved in the Superior Court law suit are similar to those in this law suit. TSP sued in this Court because the FHWA could at some point become a party to this federal law suit, and the Superior Court does not have jurisdiction over the FHWA.  In addition, the time for filing a counterclaim in the Superior Court matter passed by the time TSP became aware of FHWA officer's relationship with Roy and PPAS.  In addition, the parties were in the final stages of discovery before TSP became aware of all of PPAS and Roy's interferences in the FHWA contract, and their relationships with FHWA contracting personnel who terminated the FHWA contract.

At this point, motions for summary judgment are being considered in the Superior Court.  If TSP's motion is granted then PPAS's claim against

6

TSP will be dismissed, and this proceeding will then be the only Court that

will adjudicate TSP's claims.  If TSP's motion for summary judgment is

denied, then TSP would agree to a stay of this matter so that TSP may ask

the Superior Court to permit additional discovery of TSP's claims.  If the

Superior Court refuses TSP's counterclaim and the request for additional

discovery, then TSP should be permitted to continue its claims against PPAS

and Roy as plead herein, as any other result would deny TSP of relief for

wrongs perpetrated by PPAS and Roy.

This Court has the discretion to accept jurisdiction in this matter.  *See*

*Reiman v. Smith,* 12 F.3d 222 (D.C. Cir. 1993).  It is well settled that the

pendency of an action in state court is no bar to proceedings in federal court.

*McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762

(1910).  As such, it is within this Court's discretion to permit this action to

continue, notwithstanding the Superior Court action.  In the alternative, this

Court has the discretion to stay these proceedings pending TSP's application

to the Superior Court to permit TSP's allegations herein to be adjudicated

therein.

V.    Material Facts of Genuine Dispute Remain Between the Parties.

There is no way that the defendants are entitled to a judgment as a

matter of law while genuine disputes of material facts remain.  Fed. R. Civ.

7

P. 56. The defendants attach the affidavit of Frederick Isler, as support for their defense that neither PPAS nor Roy had any involvement with the termination of the FHWA contract.  Isler's affidavit belies the fact that Van Nixon is named in the contract as the contracting officer, which in and of itself creates a genuine issue of material fact.  (See Exhibit 1, Pg. 1)  In addition, Isler's affidavit violates the FHWA *Touhy* regulations, which are codified in 49 C.F.R. Part 9.  See, *United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951).

The FHWA's regulations require notification of and approval by the FHWA Inspector General's office before any statements may be made by FHWA employees in pending litigation that the FHWA is not a party to.  It is quite apparent that by or before July 26, 2007, Mr. Isler probably did not notify the FHWA Inspector General's office, especially when PPAS and Roy were served with the summons and complaint on July 23, 2007.  Isler's reply so soon after service raises issues of his credibility and lack of compliance with FHWA regulations.

For these reasons, there exist genuine issues of material fact and credibility that do not support the defendants' motion for summary judgment.

8

<u>CONCLUSION</u>

WHEREFORE, for the above stated reasons and for others that may

be advanced at a hearing on this matter, the plaintiff respectfully request

denial of the defendants' motion to dismiss or in the alternative for summary

judgment.

Respectfully submitted,

TOM SAWYER PRODUCTIONS, INC.
By Counsel


_____/s/ Jonathan F.S. Love_____.
Jonathan F. S. Love, Esq, DCB#424085
GUYDON LOVE, LLP
3309 Duke Street
Alexandria, VA 22314
jlove@guydonlove.com
Tel (703) 212-9000
Fax (703) 212-9001

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TOM SAWYER PRODUCTIONS, INC.    :
                                  :
            Plaintiff.        :
       v.                      :         1:07CV01304 (RMC)
                                    :
PROGRESSIVE PARTNERS         :
ACHIEVING SOLUTIONS, et al.    :
                                    :
           Defendants.    :

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing <u>Plaintiff's Memorandum of Law and Points and Authorities in Opposition to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment</u> was sent this 26th day of November, 2007, via:

☐ Telecopy                                  ☐ Overnight Mail
➢ Electronic Mail                          ☐ Courier
☐ USPS First Class Mail            ☐ Other: _____
☐ USPS Certified Mail                     _____

to the following counsel of record:

Danielle M. Espinet, Esq.
Rolinski & Suarez, LLC
14915 River Road
Potomac, Maryland 20854
Tel (240) 632-0903
despinet@rolinski.com
*Counsel for Defendants*

                                 _____/s/ Jonathan F.S. Love_____.
                                   Jonathan F. S. Love, Esq, DCB#424085
                                   GUYDON LOVE, LLP
                                   3309 Duke Street
                                   Alexandria, VA 22314
                                   jlove@guydonlove.com
                                   Tel (703) 212-9000

DTFH61-06-C-00016

| CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NO. | | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|---|
| 6-C-00016 | April 26, 2006 | | | | |

| ON SOLICITATION INFORMATION CALL: | a. NAME Van Nixon | b. TELEPHONE NUMBER (No collect calls) (202) 366-2672 | 8. OFFER DUE DATE/ LOCAL TIME |
|---|---|---|---|

| ISSUED BY: | CODE | | 10. THIS ACQUISITION IS | 11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED | 12. DISCOUNT TERMS |
|---|---|---|---|---|---|

Federal Highway Administration
400 Seventh Street, SW, HAAM- 40F
Room 4410
Washington, DC 20590

Attn: Van Nixon
Van.Nixon@fhwa.dot.gov

Authority for other than full and open competition: 41 USC 253 (c)(5)

UNRESTRICTED
SETASIDE:  % OR
SMALL BUSINESS
SM. DIS BUSINESS
[X] 8(A)

SEE SCHEDULE
13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700
13b. RATING

NAICS: 561920, Convention and Trade Show Organizers

SIZE STANDARD: $10M

14. METHOD OF SOLICITATION
[ ] RFQ  [ ] IFB  [X] RFP

| DELIVER TO | CODE | 16. ADMINISTERED BY | CODE |
|---|---|---|---|
| See attached. | | Same as Block 9 | |

| CONTRACTOR/ OFFEROR | CODE | | FACILITY CODE | 18a. PAYMENT WILL BE MADE BY | CODE |
|---|---|---|---|---|---|

Tom Sawyer Company
1218 Maple Street
Columbia, SC 29205

Federal Highway Administration
FHWA/FAA ACCOUNTS PAYABLE BRANCH AMZ-150

Oklahoma City, Oklahoma

EP NO. 803-2528773

[ ] CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a. UNLESS BLOCK IS CHECKED [X] SEE ADDENDUM

| 19. ITEM NO. | 20. SUPPLIES/SERVICES | 21. QTY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | CIVIL RIGHTS TRANSPORTATION SUMMIT- 2007 (See Attached) *(Attach Additional Sheets as Necessary)* | | | | SEE PART 1 - PRICING |

ACCOUNTING AND APPROPRIATION DATA

X0R48050-0000-027H480500-2701000000-25108-61006600, $535,242
X0R49050-0000-027J490500-2701000000-25108-61006600, $535,242

| 26. TOTAL AWARD AMOUNT (For Govt. Use Only) |
|---|
| $1,070,484 |

| | 27a. SOLICITATION INCORPORATES FAR 52.212-1 and 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA | | ARE | ARE NOT ATTACHED. |
|---|---|---|---|---|
| X | 27b. CONTRACT/PURCHASE ORDER INCORPORATES FAR 52.212-1. FAR 52.212-5 IS ATTACHED, ADDENDA | X | ARE | ARE NOT ATTACHED. |

CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN __ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

29. AWARD OF CONTRACT: REFERENCE _____ Offer_____OFFER\ [X] DATED _4/14/06__ . YOUR OFFER ON SOLICITATION (BLOCK 5) INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN IS ACCEPTED AS TO ITEMS: See Attached

SIGNATURE OF OFFEROR/CONTRACTOR

31a. UNITED STATES OF AMERICA *(SIGNATURE OF CONTRACTING OFFICER)*

| NAME AND TITLE OF SIGNER *(TYPE OR PRINT)* CAROLYN SAWYER, PRESIDENT/CEO | 30c. DATE SIGNED | 31b. NAME OF CONTRACTING OFFICER *(TYPE OR PRINT)* SARAH TARPGAARD, CONTRACTING OFFICER | 31c. DATE SIGNED |
|---|---|---|---|

| QUANTITY IN COLUMN 21 HAS BEEN | | 33. SHIP NUMBER | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR |
|---|---|---|---|---|
| CEIVED [ ] INSPECTED [ ] ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED | | [ ] PARTIAL [ ] FINAL | | |

| SIGNATURE OF AUTHORIZED GOVT. REPRESENTATIVE | 32c. DATE | 36. PAYMENT [ ] COMPLETE [ ] PARTIAL [ ] FINAL | 37. CHECK NUMBER |
|---|---|---|---|
| | | 38. S/R ACCOUNT NUMBER  39. S/R VOUCHER NUMBER | 40. PAID BY |

42a. RECEIVED BY (Print)

I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT

| SIGNATURE AND TITLE OF CERTIFYING OFFICER | 41c. DATE | 42b. RECEIVED AT (Location) |
|---|---|---|
| | | 42c. DATE RECD (YY/MM/DD)  42d. TOTAL CONTAINERS |

PLAINTIFF'S EXHIBIT 1
Opp to Dism

# TABLE OF CONTENTS

|  | Page Number |
|---|---|
| **PART ONE – PRICING** | 3 |
| Contract Summary | |
| | |
| **PART TWO – STATEMENT OF WORK** | 4 |
| Background | |
| Scope of Work | |
| Statement of Work | |
| Delineation of Tasks | |
| | |
| **PART THREE – CONTRACT ADMINISTRATION** | 10 |
| Funding | |
| Period of Performance | |
| Contracting Officer's Technical Representative | |
| Deliverables and Schedule | |
| Place of Delivery | |
| Invoices | |
| Key Personnel | |
| | |
| **PART FOUR - CONTRACT TERMS AND CONDITIONS** | 13 |
| | |
| **PART FIVE - ATTACHMENTS** | 19 |
| Technical Proposal Dated March 2, 2006 | |
| Final Price Proposal dated April 14, 2006 | |

# PART 1 – PRICING

## CONTRACT SUMMARY - CONTINUATION OF BLOCKS 19-24 FROM SF 1449

The Contactor shall provide all personnel, materials, supervision and other items and services necessary to perform the requirements of this contract, entitled "National Civil Rights Transportation Summit – 2007." This is a firm-fixed price contract. The firm-fixed price is $1,070,484.

The Contractor may request bi-weekly (every other week) payments in accordance with the following schedule. The Government will make payment based on satisfactory performance of the contract requirements contained herein.

| Invoice No. (and estimated submittal date) | Labor | Other Direct Costs | Total |
|---|---|---|---|
| 1 (May 15, 2006) | $20,000 | $10,000 | $30,000 |
| 2 (May 29, 2006) | $20,000 | $10,000 | $30,000 |
| 3 (June 12, 2006) | $20,000 | $10,000 | $30,000 |
| 4 (June 26, 2006) | $20,000 | $10,000 | $30,000 |
| 5 (July 10, 2006) | $20,000 | $10,000 | $30,000 |
| 6 (July 24, 2006) | $20,000 | $10,000 | $30,000 |
| 7 (August 7, 2006) | $20,000 | $10,000 | $30,000 |
| 8 (August 21, 2006) | $20,000 | $10,000 | $30,000 |
| 9 (September 4, 2006) | $20,000 | $10,000 | $30,000 |
| 10 (September 18, 2006) | $20,000 | $10,000 | $30,000 |
| 11 (October 2, 2006) | $20,000 | $10,000 | $30,000 |
| 12 (October 16, 2006) | $20,000 | $10,000 | $30,000 |
| 13 (October 30, 2006) | $20,000 | $10,000 | $30,000 |
| 14 (November 13, 2006) | $20,000 | $10,000 | $30,000 |
| 15 (November 27, 2006) | $20,000 | $10,000 | $30,000 |
| 16 (December 11, 2006) | $20,000 | $10,000 | $30,000 |
| 17 (December 25, 2006) | $20,000 | $20,000 | $40,000 |
| 18 (January 15, 2007) | $20,000 | $20,000 | $40,000 |
| 19 (January 29, 2007) | $20,000 | $20,000 | $40,000 |
| 20 (February 12, 2007) | $20,000 | $20,000 | $40,000 |
| 21 (February 26, 2007) | $20,000 | $20,000 | $40,000 |
| 22 (March 12, 2007) | $20,000 | $20,000 | $40,000 |
| 23 (March 26, 2007) | $20,000 | $20,000 | $40,000 |
| 24 (April 9, 2007) | $20,000 | $20,000 | $40,000 |
| 25 (April 23, 2007) | $20,000 | $20,000 | $40,000 |
| 26 (May 7, 2007) | $20,000 | $20,000 | $40,000 |
| 27 (Upon Completion of Summit and Submittal of Final Deliverable) | $65,613 | $124,871 | $190,484 |
| **TOTAL** | **$585,613** | **$484,871** | **$1,070,484** |

000003

# PART 2 – STATEMENT OF WORK

## A. BACKGROUND

The Federal Highway Administration (FHWA) Office of Civil Rights is sponsoring a National
Civil Rights Transportation Summit—2007. The Summit shall provide a forum to promote and
market the varied civil rights program initiatives and activities by FHWA in its efforts to improve
and enhance the administration and implementation of Civil Rights programs by its stakeholders,
i.e., State Transportation Agencies (STA) with special emphasis on the On-the-Job Training
(OJT) and Disadvantaged Business Enterprise (DBE) Supportive Services (SS) programs. It has
long been recognized that the Federal-aid highway program has the potential to impact the daily
lives of every citizen in the United States. The Civil Rights programs are meant to ensure
equality in participation and benefits to all.

## B. SCOPE OF WORK

The Contractor shall provide all necessary and required supervision, labor, equipment, and
supplies to successfully perform the services contemplated herein as logistical support for the
Civil Rights Transportation Summit—2007. The Contractor shall be responsible for
coordinating the overall activities for the event. The three-day event is proposed for March or
April 2007 and 1000 participants are anticipated.

## C. STATEMENT OF WORK

The Contractor shall provide all necessary and reasonable services and assistance for the
planning, coordination, marketing, and logistical support for the National Civil Rights
Transportation Summit—2007. The Contractor shall provide the Office of Civil Rights with
content management and conference coordination including all tasks as specified herein.
The Contractor shall establish linkages and partnerships with all highway stakeholders, including
Contractors' representatives and associations, financial and training institutions, community
faith-based and disability organizations, current and future OJT/DBE service providers, as well
as federal, state, local and tribal governments, Minority Institutes of Higher Education,
Historically Black Colleges and Universities, Hispanic and Tribal Serving Institutions, and other
establishments that are part of the Civil Rights community. The Summit shall provide
information and knowledge on best practices that enhance, promote and support business
knowledge and growth for FHWA transportation-related small, minority, women-owned and
disadvantaged business enterprises (DBEs) and the employment of women, minorities and low
income individuals in the highway construction industry, and civil rights practitioners throughout
State and local entities.

## D. DELINEATION OF TASKS

Task I.  Planning:

a. The Contractor shall develop, implement and execute a management/marketing plan with appropriate timelines; attendee registration; marketing/public outreach efforts; and a Summit evaluation.

b. The Contractor shall provide a strategic plan to build audiences using nationally renowned speakers, moderators, MC, presenters and any other officials.

c. The Contractor shall acquire desired OJT/DBE Summit participants, registrants, speakers, facilitators, and presenters.

d. The Contractor shall identify venues and platforms to include: the design of the Summit, plenary sessions, panels, breakout sessions, roundtables, one-on-one meetings, exhibits, call for papers and case studies.

e. The Contractor shall provide suggested parameters for the events, outreach strategies and program format/content including using a nationally renowned MC, moderators, speakers, facilitators, workshop leaders and other officials.

Task II.  Summit Site Location and Hotel Logistics

a. The Contractor shall research and present to the FHWA Office of Civil Rights a conference location in Louisville, Kentucky. The Contractor shall negotiate all aspects of the conference with the hotel provider including hotel rates, accommodations, scheduling of arrivals and departures, conference and event related accommodations including plenary and work shop rooms, luncheon space and exhibit hall. The accommodations should be based on an estimated 1,000 participants.

b. The Contractor shall contract with suitable and appropriate hotels and/or venues in Louisville, Kentucky for all conference logistics as noted item (a) above.

c. The Contractor shall secure adequate meeting space to include plenary session room(s), common area for breaks, break out sessions, a Contractor staff office, VIP room, and other key rooms to accommodate the facilitation of the agenda for the entire Summit.

d. The Contractor shall secure necessary audio-visual equipment, exhibit and special events space and special guests VIP room.

e. The Contractor shall serve as a liaison and manage hotel contract and costs associated with the Summit.

f. The Contractor shall secure and manage a block of hotel rooms for participants and special guests.

g. The Contractor shall conduct a site visit to evaluate accommodations, meeting space, amenities and accessibility.

h. The Contractor shall prepare invitation and thank you letters for signatures and mailing by the Associate Administrator for Civil Rights to potential conference participants, nationally renowned presenters, speakers, and facilitators.

000005

Note: The Contractor must obtain COTR approval on the hotel site prior to entering into any written agreement with the hotel.

Task III.   Registration Coordination and Management

a.  The Contractor shall coordinate and manage an on-site registration process during the conference to include: preparation and distribution of handouts and other required conference materials (i.e. Summit schedule, name badges, table tents, etc.) as well as respond to inquiries relevant to registration.

b.  The Contractor shall employ a participant registration system that collects pertinent data for long term and multiple uses.

c.  The Contractor shall provide confirmations to registered attendees. The Contractor shall make a list of registered attendees accessible nationally and in various forms.

d.  The Contractor shall be responsible for the receipt and recording of the registration and sponsorship information for the Summit.

e.  The Contractor shall be responsible for registration of sponsors, attendees, participants, exhibitors, one-on-ones, match making participants and the media.

f.  The Contractor shall provide for the on-site conference staff and support, as required.

Task IV.   Agenda Content Development and Management

a.  The Contractor shall make recommendations for approval on format and content based on Summit program goals and objectives for each activity.

b.   The Contractor shall coordinate the program agenda topics, speakers, and communication documents with all Summit participants in a timely manner.

c.  The Contractor shall collect and synopsize speaker and presenters biographies for program journal.

d.  The Contractor shall communicate information regarding travel, lodging and other meeting logistics to potential attendees.

e.  The Contractor shall first consider the utilization of subject matter experts/speakers and other required participants within reasonable geographical locations to minimize expenditures.

f.  The Contractor shall plan and coordinate for content and format for plenary sessions, workshops, roundtables and other conference events.

g.  The Contractor shall ensure agenda content and topics focus on the awareness and utilization of OJT/DBE supportive services program matters, relevant transportation topics, and Civil Rights programs for improving access to employment, enhancing business and leadership skills and procurement opportunities delivered by USDOT, FHWA recipients and grantees.

h.  The Contractor shall participate in the process for identifying presenters and facilitators for plenary sessions, panels, roundtables, breakout sessions and one-on-one meetings, exhibits and match making.

i.  The Contractor shall utilize creative methods to deliver Summit program content.

j. The Contractor shall participate in the identification of a process for identifying and securing the participation of OJT/DBE candidates and SBA 8(a) businesses, DBEs, state and federal officials and industry leaders to deliver Summit program content.

k. The Contractor shall participate in the management of case studies and call for papers to include in the Summit program.

l. The Contractor shall develop, coordinate and implement opening and closing special events.

m. The Contractor shall produce a uniquely designed colored, glossy, Summit brochure and other pre and post registration material marketing the events, activities, schedules, etc.

## TASK V.  Coordinate Industry, State and Service Providers Planned Events: Best Practices Showcase, Trade Show, One-on-Ones / Match Making

a. The Contractor shall coordinate the development of strategies to provide outreach to engage and acquire industry, state and local partners and service providers to sponsor and participate in the events.

b. The Contractor shall support the coordination and management of the stated events.

c. The Contractor shall provide outreach and marketing of the stated events.

d. The Contractor shall manage the scheduling of the one on ones and match making appointments.

e. The Contractor shall develop strategies and provide outreach efforts to OJT/DBE support services providers to build advance buy-in and active participation in the Summit.

f. The Contractor shall coordinate and facilitate meetings to fully engage the OJT/DBE support service providers as Summit partners to provide input into program content.

## TASK VI.  Provide National Education, Outreach and Marketing

a. The Contractor shall develop the Summit branding relative to the designated theme to include logo, signage and all printed collaterals, and internet outreach.

b. The Contractor shall develop and provide a marketing outreach strategy to raise awareness and highlight the value of the Summit.

c. The Contractor shall provide save-the-date materials with plenary agenda and Summit highlights, Summit registration forms, program booklets, etc.

d. The Contractor shall develop an electronic Summit newsletter highlighting tapes, speakers, and panelists.

e. The Contractor shall design special announcement-invitation for potential conference participants, state and federal officials.

f. The Contractor shall partner with States to utilize existing communications systems to enhance Summit attendance.

g. The Contractor shall create a strategy for delivering the Summit programming via five satellite locations.

h. The Contractor shall develop and produce evaluation/survey materials.

000007

## TASK VII.  Publicity/Mixed Media Support

a.  The Contractor shall use a variety of communications and media tools to highlight FWHA Civil Rights/State partner achievements.

b.  The Contractor shall maximize website use to promote the Summit and its benefits to all stakeholders/FHWA state offices, OJT/DBE service providers and the OJT/DBE communities.

c.  The Contractor shall provide extensive media support to enhance the visibility of branding of the Summit to potential participants and attendees.  This should include, but not be limited to event publicity, promotions, paid advertisement in trade publications, media coverage, in-house photography, press releases, TV/Newspaper coverage, and same day media coverage.

## TASK VIII.  Preparation of Report on Summit

The Contractor shall prepare a report on the outcome of the Summit within 30 days after the Summit.  The report shall be presented in a booklet form with pictorial highlights of the Summit. The report contents shall be developed so that the information can be placed on the FHWA Office of Civil Rights website.  The report shall be in compliance with the requirements of Section 508 (see Section 508 Requirement, below). The Contractor shall also deliver 200 copies of the report.

## TASK IX.   Summit Technical Assistance:

The Contractor shall prepare for the delivery of the Summit, a management plan and activity timeline that shall be used as a management tool in implementing the Summit.

## *REQUIREMENTS FOR IMPLEMENTING SECTION 508 STANDARDS*

The following applies to all FHWA Contracts issued on or after June 25, 2001, for Preparation of Technical reports or other documents that FHWA plans to post on a website.

In addition to the work requirements specified in this statement of work, the Contractor shall ensure that all electronic documents that they prepare will meet the requirements of Section 508 of the Rehabilitation Act.  The act requires that all electronic products prepared for the Federal Government be accessible to persons with disabilities, including those with vision, hearing, cognitive, and mobility impairments. See Section 508 of the Rehabilitation Act (http://www.access-board.gov/508.htm) and the Federal IT Accessibility Initiative (Home Page) (http://section508.gov/) for detailed information.

The FHWA has determined that the accessibility requirements contained in the Electronic and Information Technology Accessibility Standards, Section 1194.22, "Web-based intranet and internet information and applications," apply to this work.  The standards are available at www.access-board.gov/508.htm.   The following paragraphs summarize the requirements for preparing FHWA reports in conformance with Section 508 for eventual posting by FHWA to an

000008

FHWA-sponsored website. If you have further questions, please contact the FHWA Contracting Officer's Technical Representative (COTR) listed in this contract.

<u>Electronic documents with images</u>

Provide a text equivalent for every non-text element in all publications prepared in electronic format. Use descriptions (such as, "alt" and "longdesc") for all non-text images or place them in element content. For all documents prepared, vendors must prepare one standard HTML format (as described in this statement of work) AND one text format that includes descriptions for all non-text images. "Text equivalent" means text sufficient to reasonably describe the image. For example, an image that is merely decorative requires only a very brief "text equivalent" description. However, if the image conveys information that is important to the content of the report, then text sufficient to reasonably describe that image and its purpose within the context of the report must be provided.

<u>Electronic documents with complex charts or data tables</u>

When preparing tables that are heavily designed, provide adequate alternate information so that assistive technologies can read them out. Identify row and column headers for data tables. Provide the information in a non-linear form. Markup shall be used to associate data cells and header cells for data tables that have two or more logical levels of row or column headers.

<u>Electronic documents with forms</u>

When electronic forms are designed to be completed on-line, the form shall allow people using assistive technology to access the information, field elements, and functionality required for completion and submission of the form, including all directions and cues.

# PART 3 - CONTRACT ADMINISTRATION

## FUNDING

(a) Currently, funds in the amount of $1,070,484 are obligated to this contract.

(b) This contract is fully funded.

## PERIOD OF PERFORMANCE

All work and services required herein shall be completed on or before 18 months from the effective date of the contract.

## CONTRACTING OFFICER'S TECHNICAL REPRESENTATIVE

The Contracting Officer has designated Ms. Brenda Armstead of the FHWA Office of Civil Rights as the Technical Representative (COTR) to assist in monitoring the work under this contract. The COTR is responsible for the technical administration of the contract and technical liaison with the Contractor. The COTR IS NOT authorized to change the scope of work or specifications as stated in the contract, to make any commitments or otherwise obligate the Government or authorize any changes which affect the contract price, delivery schedule, period of performance or other terms or conditions.

The Contracting Officer is the only individual who can legally commit or obligate the Government for expenditure of public funds. The technical administration of this contract shall not be construed to authorize the revision of the terms and conditions of this contract. Any such revision shall be authorized in writing by the Contracting Officer.

## MONTHLY PROGRESS REPORT

The Contractor shall deliver electronically to the COTR and the CO a monthly progress report by the 15th of the month following the period being reported. The progress reports shall include:

- A summary of activities performed during the month being reported;
- A summary of activities planned for the next month;
- Identification of any problems and recommended solutions; and
- A summary of any issues requiring FHWA action to resolve or complete.

## DELIVERABLES AND SCHEDULE

The Contractor shall deliver the items listed below to FHWA.

| DELIVERABLE | CONTRACT REFERENCE | DUE DATE | FORMAT/QUANTITIES |
|---|---|---|---|
| Marketing Plan | Part 2 Task Ia | June 12, 2006 | Electronic copy to CO. Hard copy and electronic copy to COTR. |
| Strategic Plan | Part 2 Task Ib | June 12, 2006 | Electronic copy to CO. Hard copy and electronic copy to COTR. |
| Conference Location Recommendation | Part 2 Task IIa | June 26, 2006 | Electronic copy to CO and COTR. |
| Invitation Letters | Part 2 Task IIh | August 21, 2006 | Electronic copy to COTR and CO. |
| Registration List | Part 2  Task IIIc | August 21, 2006 | Electronic copy to COTR and CO. |
| Agenda Format and Content Recommendations | Part 2 Task IVa | September 4, 2006 | Electronic copy to COTR and CO. |
| Summit Brochure | Part 2 Task IVm | October 16, 2006 | Electronic copy to COTR and CO. |
| Save-the-date Materials | Part 2 Task VIc | September 18, 2006 | Electronic copy to COTR and CO. |
| Summit Report | Part 2 Task VIII | 30 days after the Summit | Electronic copy to COTR and CO. |
| Management Implementation Plan | Part 2 Task IXa | April 9, 2007 | Electronic copy to COTR and CO. |

## PLACE OF DELIVERY

All deliverables specified for delivery to the COTR shall be delivered F.O.B. Destination, under transmittal letter to the COTR at the following address:

    Department of Transportation
    Federal Highway Administration
    400 Seventh Street, S.W.
    Washington, D.C. 20590
    Attn: Ms. Brenda Armstead, HCR

All deliverables specified for delivery to the Contracting Officer (CO) shall be delivered F.O.B. Destination, under transmittal letter to the CO at the following address:

    Federal Highway Administration
    Office of Acquisition Management
    400 Seventh Street, S.W.
    HAAM-40F, Room 4410
    Washington, D.C.  20590

## INVOICES

The Contractor shall submit invoices in accordance with FAR 52.212-4(g). The Contractor may submit requests for payment in accordance with fixed prices specified in Part 1 of this contract for work completed and accepted by the FHWA. FHWA will make payment upon determination of satisfactory performance of the contract requirements including the deliverables schedule.The Contractor shall submit an original and one copy of each invoice to the Contracting Officer at the address cited above. In addition, the Contractor shall submit one copy of the invoice directly to the COTR at the address cited above.

## TAR 1252.237-73 KEY PERSONNEL (MAY 2005)

(a) The personnel as specified below are considered essential to the work being performed under this contract and may, with the consent of the contracting parties, be changed from time to time during the course of the contract by adding or deleting personnel, as appropriate.

(b) Before removing, replacing, or diverting any of the specified individuals, the Contractor shall notify the contracting officer, in writing, before the change becomes effective. The Contractor shall submit information to support the proposed action to enable the contracting officer to evaluate the potential impact of the change on the contract. The Contractor shall not remove or replace personnel under this contract until the Contracting Officer approves the change. The three Key Personnel under this Contract are:

(1) Carolyn Sawyer (Tom Sawyer Company);  (2) Monica Brown;  (3) Renata Roy

**(End of clause)**

# PART 4 - CONTRACT TERMS AND CONDITIONS

**52.212-4**   **Contract Terms and Conditions - Commercial Items**          **(Sep 2005)**

**52.212-5**   **Contract Terms and Conditions Required to Implement Statutes or Executive Orders - Commercial Items**          **(Jan 2006)**

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.233-3, Protest After Award (AUG 1996) (31 U.S.C. 3553).

(2) 52.233-4, Applicable Law for Breach of Contract Claim (OCT 2004) (Pub. L. 108-77, 108-78).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the contracting officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

*[Contracting Officer shall check as appropriate.]*

 X (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Jul 1995), with Alternate I (Oct 1995)(41 U.S.C. 253g and 10 U.S.C. 2402).

___ (2) 52.219-3, Notice of Total HUBZone Set-Aside (Jan 1999)(15 U.S.C. 657a).

___ (3) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Jul 2005) (if the offeror elects to waive the preference, it shall so indicate in its offer)(15 U.S.C. 657a).

___ (4) [Reserved]

___ (5) (i) 52.219-6, Notice of Total Small Business Aside (June 2003) (15 U.S.C. 644).

___ (ii) Alternate I (Oct 1995) of 52.219-6.

___ (iii) Alternate II (Mar 2004) of 52.219-6.

___ (6) (i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003)(15 U.S.C. 644).

___ (ii) Alternate I (Oct 1995) of 52.219-7.

___ (iii) Alternate II (Mar 2004) of 52.219-7.

_X_ (7) 52.219-8, Utilization of Small Business Concerns (May 2004) (15 U.S.C. 637(d)(2) and (3)).

___ (8) (i) 52.219-9, Small Business Subcontracting Plan (Jul 2005)(15 U.S.C. 637 (d)(4)).

___ (ii) Alternate I (Oct 2001) of 52.219-9.

___ (iii) Alternate II (Oct 2001) of 52.219-9.

_X_ (9) 52.219-14, Limitations on Subcontracting (Dec 1996)(15 U.S.C. 637(a)(14)).

___ (10) (i) 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (Sep 2005)(10 U.S.C. 2323) (if the offeror elects to waive the adjustment, it shall so indicate in its offer).

___ (ii) Alternate I (June 2003) of 52.219-23.

___ (11) 52.219-25, Small Disadvantaged Business Participation Program—Disadvantaged Status and Reporting (Oct 1999)(Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

___ (12) 52.219-26, Small Disadvantaged Business Participation Program—Incentive Subcontracting (Oct 2000)(Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

___ (13) 52.219-27, Notice of Total Service-Disabled Veteran-Owned Small Business Set-Aside (May 2004).

_X_ (14) 52.222-3, Convict Labor (June 2003)(E.O. 11755).

_X_ (15) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (Jan 2006) (E.O. 13126).

_X_ (16) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

_X_ (17) 52.222-26, Equal Opportunity (Apr 2002)(E.O. 11246).

_X_ (18) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Dec 2001)(38 U.S.C. 4212).

_X__ (19) 52.222-36, Affirmative Action for Workers with Disabilities (Jun 1998)(29 U.S.C. 793).

_X__ (20) 52.222-37, Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Dec 2001)(38 U.S.C. 4212).

_X__ (21) 52.222-39, Notification of Employee Rights Concerning Payment of Union Dues or Fees (Dec 2004) (E.O. 13201).

___ (22) (i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Products (Aug 2000)(42 U.S.C. 6962(c)(3)(A)(ii)).

___ (ii) Alternate I (Aug 2000) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)).

___ (23) 52.225-1, Buy American Act--Supplies (June 2003)(41 U.S.C. 10a-10d).

___ (24) (i) 52.225-3, Buy American Act –Free Trade Agreements – Israeli Trade Act (Jan 2006)(41 U.S.C. 10a-10d, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, Pub. L. 108-77, 108-78, 108-286).

___ (ii) Alternate I (Jan 2004) of 52.225-3.

___ (iii) Alternate II (Jan 2004) of 52.225-3.

___ (25) 52.225-5, Trade Agreements (Jan 2006)(19 U.S.C. 2501, et seq., 19 U.S.C. 3301 note).

_X_ (26) 52.225-13, Restrictions on Certain Foreign Purchases (Mar 2005) (E.o.s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

___ (27) 52.225-15, Sanctioned European Union Country End Products (Feb 2000)(E.O. 12849).

___ (28) 52.225-16, Sanctioned European Union Country Services (Feb 2000)(E.O. 12849).

___ (29) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002)(41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

___ (30) 52.232.30, Installment Payments for Commercial Items (Oct 1995)(41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

000015

_X_ (31) 52.232-33, Payment by Electronic Funds Transfer—Central Contractor Registration (Oct. 2003)(31 U.S.C. 3332).

____ (32) 52.232-34, Payment by Electronic Funds Transfer—Other Than Central Contractor Registration (May 1999)(31 U.S.C. 3332).

____ (33) 52.232-36, Payment by Third Party (May 1999)(31 U.S.C. 3332).

____ (34) 52.239-1, Privacy or Security Safeguards (Aug 1996)(5 U.S.C. 552a).

____ (35) (i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Apr 2003)(46 U.S.C. 1241 and 10 U.S.C. 2631).

____ (ii) Alternate I (Apr 2003) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or executive orders applicable to acquisitions of commercial items:

*[Contracting Officer check as appropriate.]*

____ (1) 52.222-41, Service Contract Act of 1965, as Amended (Jul 2005)(41 U.S.C. 351, *et seq.*).

____ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 1989)(29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

____ (3) 52.222-43, Fair Labor Standards Act and Service Contract Act -- Price Adjustment (Multiple Year and Option Contracts) (May 1989)(29 U.S.C.206 and 41 U.S.C. 351, *et seq.*).

____ (4) 52.222-44, Fair Labor Standards Act and Service Contract Act -- Price Adjustment (Feb 2002)(29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

____ (5) 52.222-47, SCA Minimum Wages and Fringe Benefits Applicable to Successor Contract Pursuant to Predecessor Contractor Collective Bargaining Agreements (CBA) (May 1989)(41 U.S.C. 351, *et seq.*).

(d) *Comptroller General Examination of Record.* The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in

excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records – Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)

(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c) and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in paragraphs (i) through (vii) of this paragraph in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause--

(i) 52.219-8, Utilization of Small Business Concerns (May 2004)(15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $500,000 ($1,000,000 for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(ii) 52.222-26, Equal Opportunity (Apr 2002)(E.O. 11246).

(iii) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Dec 2001)(38 U.S.C. 4212).

000017

(iv) 52.222-36, Affirmative Action for Workers with Disabilities (June 1998)(29 U.S.C. 793).

(v) 52.222-39, Notification of Employee rights Concerning Payment of Union Dues or Fees (Dec 2004) (E.O. 13201).

(vi) 52.222-41, Service Contract Act of 1965, as Amended (Jul 2005), flow down required for all subcontracts subject to the Service Contract Act of 1965 (41 U.S.C. 351, *et seq.*)

(vii) 52.247-64, Preference for Privately-Owned U.S. Flag Commercial Vessels (Apr 2003)(46 U.S.C. Appx 1241 and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64,

(2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(End of Clause)

**52.242-15 Stop-Work Order (Aug 1989)**

**52.252-2 Clauses Incorporated by Reference (Feb 1998)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer shall make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://www.dot.gov/ost/m60/
**http://www.arnet.gov/far/**

(End of Clause)

**TRANSPORTATION ACQUISITION REGULATION CLAUSES**

**TAR 1252.223-73 SEAT BELT USE POLICIES AND PROGRAMS (MAY 2005)**

**TAR 1252.219-71 Section 8(a) Direct Awards (APR 2005)**

# PART 5 - ATTACHMENTS

1. Technical Proposal Dated March 2, 2006
2. Final Price Proposal Dated April 14, 2006

000019



U.S. Department
of Transportation

**Federal Highway
Administration**

400 Seventh Street, SW
Washington, DC 20590

In reply, refer to: HAAM-40

Tom Sawyer Company                                           MAR  - 7  2007
P.O. Box 12551
Columbia, SC 29211

Re:          Contract DTFH61-06-C-00016, Civil Rights Transportation Summit 2007

Attention:    Ms. Carolyn Sawyer, President/CEO, Tom Sawyer Company

Dear Ms. Sawyer,

Enclosed please find your executed copy of Modification No. 1 to the referenced contract.
This modification administratively closes out the contract.

If you have any questions, please contact the undersigned at (202) 366-5750 or email
Sarah.Tarpgaard@dot.gov.

Sincerely,

Sarah Tarpgaard

**Sarah Tarpgaard
Contracting Officer
Office of Acquisition Management**

Enclosure

1

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| Modification No. 01 | MAR - 6 2007 | 27-01-6069 | |

Modification No. 2

| 6. ISSUED BY | CODE | HAAM-40 | 7. ADMINISTERED BY (If other than Item 6) | CODE |
|---|---|---|---|---|

Department of Transportation
Federal Highway Administration
Office of Acquisition Management
400 Seventh Street, SW, Room 4410
Washington, DC 20590

7. ADMINISTERED BY (If other than Item 6)
Federal Highway Administration
Office of Acquisition Management, HAAM-40F
400 Seventh Street, SW
Washington, D.C. 20590

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and Zip Code) | | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|

Tom Sawyer Company
1218 Maple Street
Columbia, SC 29205

9B. DATED (SEE ITEM 11)

X | 10A. MODIFICATION OF CONTRACT/ORDER NO.
DTFH61-06-C-00016

| CODE | | FACILITY CODE | 10B. DATED (SEE ITEM 13) |
|---|---|---|---|

April 26, 2006

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning ___ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. **FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER.** If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

**12. ACCOUNTING AND APPROPRIATION DATA (If required)**

15X0R48050-0000-027H480500-2701000000-25108-61006600, DEOBLIGATE $535,242
15X0R49050-0000-027J490500-2701000000-25108-61006600, DEOBLIGATE $246,456.67

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS,**
**IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| | | |
|---|---|---|
| A | THIS CHANGE ORDER IS ISSUED PURSUANT TO (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. | |
| B | THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (Such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). | |
| C | THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: | |
| X D | OTHER (Specify type of modification and authority) FAR 52.212-4(l) TERMINATION FOR THE GOVERNMENT'S CONVENIENCE | |

**E. IMPORTANT:** Contractor ☐ is not, ☒ is required to sign this document and return ___3___ copies to the issuing office.

**14. DESCRIPTION OF AMENDMENT/MODIFICATION** (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this modification is to: (1) document the settlement agreement of the parties with respect to the FHWA's termination for convenience of the contract; (2) deobligate funding in the amount of $781,698.67 and (3) administratively CLOSE OUT the subject contract. Accordingly, the parties agree to the information as shown on the attached page 2.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15a. NAME AND TITLE OF SIGNER (Type or print) | 15a. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| Carolyn Sawyer President/CEO | SARAH TARPGAARD, Contracting Officer |

| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
|---|---|---|---|
| (Signature of person authorized to sign) | 2/7/07 | BY (Signature of Contracting Officer) | 3/6/07 |

01-152-8070

30-105

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

PREVIOUS EDITION NOT USABLE

000021

(1) The contract was terminated for the convenience of the Government by letter dated September 6, 2006. The parties hereby agree to the following settlement agreement.

| | |
|---|---|
| Contract Award Amount (Fully Funded at Award) | $1,070,484 |
| Amount Invoiced and Paid for Work Completed through Termination Date of September 6, 2006 (Invoices No. 1 – 9) | $270,000 |
| Settlement Agreement - Amount Approved (See below) | $18,785.33 |
| Amount Deobligated by This Modification No. 1 | $781,698.67 |

(2) The Government agrees to pay the Contractor $18,785.33 for the following items:

| Expense Description | Amount Approved |
|---|---|
| AASHTO Conference Expenses | $6,706.73 |
| Charlotte Airline Ticket | $378.60 |
| Project Close-Out Labor Hours (Simanco Staley) | $3,750.00 |
| Project Close-Out Labor Hours (Carolyn Sawyer) | $1,500.00 |
| Domain Name Costs | $850.00 |
| Additional Space Lease | $600.00 |
| Website Related Costs including license (CVENT Subcontract) | $5,000.00 |
| **Total** | **$18,785.33** |

(3) The Contractor releases the Government from all liability and from all existing and future claims and demands that it may have under this contract, insofar as it pertains to the contract, for the items described in paragraph (2) above.

1

1      SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

2                    Civil Division

3

4     - - - - - - - - - - - - - - - x   **ORIGINAL**

5     PORTFOLIO MANAGEMENT GROUP,      :

6     LTD, et al.,                     :

7             Plaintiffs,              : Civil Action

8         vs.                          : No. 2007 CA 000034B

9     TOM SAWYER PRODUCTIONS, INC.,    :

10           Defendant.                :

11    - - - - - - - - - - - - - - - x

12

13               Deposition of RENATA ROY

14                   Washington, D.C.

15                 Monday, July 23, 2007

16                     1:10 p.m.

17

18

19

20    Job No.:  2-107674

21    Pages:  1 - 89

22    Reported by:  Sarah M. Bickel

L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, I
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.
Web: ladreporting.com • E-mail: lisa@ladreporting.
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, M



**PLAINTIFF'S**
**EXHIBIT**
2

Opp to Dism

DEPOSITION OF RENATA ROY
CONDUCTED ON MONDAY, JULY 23, 2007

17

1      Q   So it's a home-based business?

2      A   Yes, it is.

3      Q   Who are the owners of this business?

4      A   I am.

5      Q   Sole owner?

6      A   Yes.

7      Q   What is the type of business that you

8    have?

9      A   Professional management consulting, focus

10   on business and education.

11     Q   Any other officers or directors of your

12   corporation?

13     A   Just me.

14     Q   Do you have a registered office in the

15   District of Columbia?

16     A   No, I'm not required.

17     Q   Do you do business in the District of

18   Columbia?

19     A   Yes, I do.

20     Q   Who told you that you were not required

21   to --

22     A   My CPA.  I was told that if I did not have